IN THE COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL ACTION

JESSE AND MELISSA STOLT,

      Plaintiff,

v.                                         CASE NO.:

AMERICAN STRATEGIC INSURANCE CORP.,

      Defendant.
_____/

### COMPLAINT FOR DAMAGES

      **COMES NOW**, Plaintiff, JESSE AND MELISSA STOLT (hereinafter "Plaintiff"), by and through its undersigned counsel, hereby sues Defendant, AMERICAN STRATEGIC INSURANCE CORP. (hereinafter "Defendant"), and alleges as follows:

### COMMON ALLEGATIONS
### Jurisdiction & Parties:

      1.      This is an action for damages in excess of $50,000.00, exclusive of interest, fees, and costs, and therefore jurisdiction is with this Court.

      2.      This action is for a property insurance dispute regarding insurance that covers a piece of real property located within LEE County with an address of 1493 Center St., Sanibel, FL 33957 (hereinafter "Property"), and therefore is within jurisdiction of this Court.

      3.      The Property is owned by Melissa Stolt (hereinafter "Homeowner").

      4.      This is an action concerning a residential policy of insurance for the above Property. Delivery of the Policy was made in the state of Florida. Therefore, jurisdiction is with this Court.

      5.      As detailed more fully herein, Defendant, through its agents, breached the policy of insurance in Florida, and therefore is in the jurisdiction of this Court.

      6.      The Defendant issued the residential policy that covered the Property.

7.      All condition precedent under *Fla. Stat. 627.70152* has now been complied with, by notifying the Florida Department of Financial Services with a notice of the intent to initiate this litigation at least 10 business days prior to the filing hereof.

8.      Defendant's payments for the loss will be made in this County.   Therefore, jurisdiction is proper with this Court.

## Background Facts:

9.      The policy issued by Defendant that covered the Property has a **policy number** of **0FLD157985**. (hereinafter "Policy.")   Despite demand for a certified copy of the Policy, Defendant has unlawfully, and without any justification, refused to provide one.  A non-certified copy, that may be the policy, is attached as "Exhibit A" to show coverage was extended.

10.      The Homeowner procured insurance and has timely paid the premiums due under the Policy and followed all of its obligations under the Policy to be covered in case of need.

11.      On or about September 28, 2022, the Property suffered extensive damage in excess of the deductibles contained in the Policy.  Damages occurred as a result of flooding from Hurricane Ian.  Said damages are covered under the Policy of insurance issued by Defendant.

12.      The Homeowner, and later Plaintiff and its agents, timely reported the loss to Defendant and requested coverage under the Policy.

13.      Defendant's assigned claim number is **20184-221001**.

14.      Now that the Property has suffered a covered loss that needs to be repaired, Defendant refuses to indemnify the Homeowner for the damages covered under the Policy.

15.      At all times, the Homeowner and its agents have complied with all requests and demands of Defendant.

16.      Plaintiff has provided detailed estimates showing the amount of money due and owing under the policy.

17.    Defendant has refused to pay the amount of money due under the Policy and has therefore, underpaid for the loss.

18.    Plaintiff has been damaged by Defendant's failure to the pay the amounts due and owing under the Policy.

19.    All conditions precedent to this action have been complied with, substantially complied with, or waived.  Defendant has suffered no prejudice.

## COUNT 1 – BREACH OF CONTRACT

20.    Plaintiff re-avers and re-alleges paragraphs 1-18, as if fully alleged herein.

21.    The Policy covered the losses to the Property.

22.    The Policy is a contract that exists between the Homeowner and Defendant.

23.    The Policy required Defendant to pay the amount of money necessary to restore the Property to its pre-loss condition.

24.    Defendant has failed to provide all payments due under the Policy for the loss.

25.    Defendant's failure to pay on this loss is a breach of the contract.

26.    Defendant's breach has caused ongoing damages to the Property and to Plaintiff.

27.    As a result of the breach, Plaintiff had to retain the undersigned attorney and firm, and has agreed to pay a reasonable fee for which Defendant is liable under *Fla. Stat. 627.428*.

**WHEREFORE,** Plaintiff demands judgment against Defendant for the amounts due under the Policy, plus costs, prejudgment interest, and attorneys' fees pursuant to *Fla. Stat. 627.428* and any other source.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury for all issues so triable.

**<u>DESIGNATION OF E-MAIL ADDRESS PURSUANT TO RULE 2.516</u>**

Pursuant to _<u>Fla. R. Jud. Admin. 2.516</u>_, Plaintiff hereby files its notice of designation of email address for the purpose of service of all documents in this proceeding: paul@mychampionlawyer.com.

Respectfully submitted,

**Champion Legal Group Lawyers**

<u>/s/  _Paul T. Udouj_</u>
Paul T. Udouj, Esq.
Fla. Bar. No. 1008102
_Attorney for Plaintiff_
3606 Enterprise Ave., Suite 225
Naples, FL 34104
(239) 314-7773
paul@mychampionlawyer.com
service@mychampionlawyer.com

*National Flood Insurance Program*

EXHIBIT"A"

# Dwelling Form

## Standard Flood Insurance Policy

F-122 / October 2021



---

FEDERAL EMERGENCY MANAGEMENT AGENCY, FEDERAL INSURANCE AND MITIGATION ADMINISTRATION

Standard Flood Insurance Policy

# Dwelling Form

*Please read the policy carefully. The flood insurance provided is subject to limitations, restrictions, and exclusions.*

## I. AGREEMENT

**A.** This policy insures the following types of property only:

1. A one to four family residential building, not under a condominium form of ownership;

2. A single-family dwelling unit in a condominium building; *and*

3. Personal property in a building.

**B.** The Federal Emergency Management Agency (FEMA) provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations.

**C.** We will pay you for direct physical loss by or from flood to your insured property if you:

1. Have paid the full amount due (including applicable premiums, surcharges, and fees);

2. Comply with all terms and conditions of this policy; *and*

3. Have furnished accurate information and statements.

**D.** We have the right to review the information you give us at any time and revise your policy based on our review.

**E.** This policy insures only one building. If you own more than one building, coverage will apply to the single building specifically described in the Flood Insurance Application.

**F.** Subject to the exception in I.G below, multiple policies with building coverage cannot be issued to insure a single building to one insured or to different insureds, even if separate policies were issued through different NFIP insurers. Payment for damages may only be made under a single policy for building damages under Coverage A–Building Property.

**G.** A Dwelling Form policy with building coverage may be issued to a unit owner in a condominium building that is also insured under a Residential Condominium Building Association Policy (RCBAP). **However, no more than $250,000 may be paid in combined benefits for a single unit under the Dwelling Form policy and the RCBAP. We will only pay for damage once. Items of damage paid for under an RCBAP cannot also be claimed under the Dwelling Form policy.**

## II. DEFINITIONS

**A.** In this policy, "you" and "your" refer to the named insured(s) shown on the Declarations Page of this policy and the spouse of the named insured, if a resident of the same household. Insured(s) also includes: Any mortgagee and loss payee named in the Application and Declarations Page, as well as any other mortgagee or loss payee determined to exist at the time of loss, in the order of precedence. "We," "us," and "our" refer to the insurer.

Some definitions are complex because they are provided as they appear in the law or regulations, or result from court cases.

**B. Flood**, as used in this flood insurance policy, means:

1. A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (one of which is your property) from:

   a. Overflow of inland or tidal waters;

   b. Unusual and rapid accumulation or runoff of surface waters from any source;

   c. Mudflow.

2. Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion

or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in B.1.a above.

**C.** The following are the other key definitions we use in this policy:

1. **Act.** The National Flood Insurance Act of 1968 and any amendments to it.

2. **Actual Cash Value.** The cost to replace an insured item of property at the time of loss, less the value of its physical depreciation.

3. **Application.** The statement made and signed by you or your agent in applying for this policy. The application gives information we use to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment. The application is part of this flood insurance policy.

4. **Base Flood.** A flood having a one percent chance of being equaled or exceeded in any given year.

5. **Basement.** Any area of a building, including any sunken room or sunken portion of a room, having its floor below ground level on all sides.

6. **Building**

   a. A structure with two or more outside rigid walls and a fully secured roof that is affixed to a permanent site;

   b. A manufactured home, also known as a mobile home, is a structure: built on a permanent chassis, transported to its site in one or more sections, and affixed to a permanent foundation; *or*

   c. A travel trailer without wheels, built on a chassis and affixed to a permanent foundation, that is regulated under the community's floodplain management and building ordinances or laws.

   Building does not mean a gas or liquid storage tank, shipping container, or a recreational vehicle, park trailer, or other similar vehicle, except as described in C.6.c above.

7. **Cancellation.** The ending of the insurance coverage provided by this policy before the expiration date.

8. **Condominium.** That form of ownership of one or more buildings in which each unit owner has an undivided interest in common elements.

9. **Condominium Association.** The entity made up of the unit owners responsible for the maintenance and operation of:

   a. Common elements owned in undivided shares by unit owners; *and*

   b. Other buildings in which the unit owners have use rights; where membership in the entity is a required condition of ownership.

10. **Condominium Building.** A type of building for which the form of ownership is one in which each unit owner has an undivided interest in common elements of the building.

11. **Declarations Page.** A computer-generated summary of information you provided in your application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is a part of this flood insurance policy.

12. **Deductible.** The amount of an insured loss that is your responsibility and that is incurred by you before any amounts are paid for the insured loss under this policy.

13. **Described Location.** The location where the insured building(s) or personal property are found. The described location is shown on the Declarations Page.

14. **Direct Physical Loss By or From Flood.** Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property.

15. **Dwelling.** A building designed for use as a residence for no more than four families or a single-family unit in a condominium building.

16. **Elevated Building.** A building that has no basement and that has its lowest elevated floor raised above ground level by foundation walls, shear walls, posts, piers, pilings, or columns.

17. **Emergency Program.** The initial phase of a community's participation in the National Flood Insurance Program. During this phase, only limited amounts of insurance are available under the Act and the regulations prescribed pursuant to the Act.

18. **Federal Policy Fee.** A flat rate charge you must pay on each new or renewal policy to defray certain administrative expenses incurred in carrying out the National Flood Insurance Program.

19. **Improvements.** Fixtures, alterations, installations, or additions comprising a part of the dwelling or apartment in which you reside.

20. **Mudflow.** A river of liquid and flowing mud on the surface of normally dry land areas, as when earth is carried by a current of water. Other earth movements, such as landslide, slope failure, or

a saturated soil mass moving by liquidity down a slope, are not mudflows.

21. **National Flood Insurance Program (NFIP).** The program of flood insurance coverage and floodplain management administered under the Act and applicable Federal regulations in Title 44 of the Code of Federal Regulations, Subchapter B.

22. **Policy.** The entire written contract between you and us. It includes:

    a. This printed form;

    b. The application and Declarations Page;

    c. Any endorsement(s) that may be issued; *and*

    d. Any renewal certificate indicating that coverage has been instituted for a new policy and new policy term. Only one dwelling, which you specifically described in the application, may be insured under this policy.

23. **Pollutants.** Substances that include, but are not limited to, any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

24. **Post-FIRM Building.** A building for which construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map (FIRM), whichever is later.

25. **Principal Residence.** The dwelling in which you or your spouse have lived for at least 80 percent of:

    a. The 365 days immediately preceding the time of loss; *or*

    b. The period of ownership of you or your spouse, if either you or your spouse owned the dwelling for less than 365 days immediately preceding the time of loss.

26. **Probation Surcharge.** A flat charge you must pay on each new or renewal policy issued covering property in a community the NFIP has placed on probation under the provisions of 44 CFR 59.24.

27. **Regular Program.** The final phase of a community's participation in the National Flood Insurance Program. In this phase, a Flood Insurance Rate Map is in effect and full limits of coverage are available under the Act and the regulations prescribed pursuant to the Act.

28. **Special Flood Hazard Area (SFHA).** An area having special flood or mudflow, and/or flood-related erosion hazards, and shown on a Flood Hazard Boundary Map or Flood Insurance Rate Map as Zone A, AO, A1–A30, AE, A99, AH, AR, AR/A, AR/AE, AR/AH, AR/AO, AR/A1–A30, V1–V30, VE, or V.

29. **Unit.** A single-family residential space you own in a condominium building.

30. **Valued Policy.** A policy in which the insured and the insurer agree on the value of the property insured, that value being payable in the event of a total loss. The Standard Flood Insurance Policy is not a valued policy.

---

## III. PROPERTY INSURED

### A. Coverage A—Building Property

We insure against direct physical loss by or from flood to:

1. The dwelling at the described location, or for a period of 45 days at another location as set forth in III.C.2.b, Property Removed to Safety.

2. Additions and extensions attached to and in contact with the dwelling by means of a rigid exterior wall, a solid load-bearing interior wall, a stairway, an elevated walkway, or a roof. At your option, additions and extensions connected by any of these methods may be separately insured. Additions and extensions attached to and in contact with the building by means of a common interior wall that is not a solid load-bearing wall are always considered part of the dwelling and cannot be separately insured.

3. A detached garage at the described location. **Coverage is limited to no more than 10 percent of the limit of liability on the dwelling.** Use of this insurance is at your option but reduces the building limit of liability. **We do not cover any detached garage used or held for use for residential (i.e., dwelling), business, or farming purposes.**

4. Materials and supplies to be used for construction, alteration, or repair of the dwelling or a detached garage while the materials and supplies are stored in a fully enclosed building at the described location or on an adjacent property.

5. A building under construction, alteration, or repair at the described location.

## a. If the structure is not yet walled or roofed as described in the definition for building (see II.C.6.a) then coverage applies:

### (1) Only while such work is in progress; *or*

### (2) If such work is halted, only for a period of up to 90 continuous days thereafter.

## b. However, coverage does not apply until the building is walled and roofed if the lowest floor, including the basement floor, of a non-elevated building or the lowest elevated floor of an elevated building is:

### (1) Below the base flood elevation in Zones AH, AE, A1–A30, AR, AR/AE, AR/AH, AR/A1–A30, AR/A, AR/AO; *or*

### (2) Below the base flood elevation adjusted to include the effect of wave action in Zones VE or V1–V30.

The lowest floor level is based on the bottom of the lowest horizontal structural member of the floor in Zones VE or V1–V30 or the top of the floor in Zones AH, AE, A1–A30, AR, AR/AE, AR/AH, AR/A1–A30, AR/A, and AR/AO.

6. A manufactured home or a travel trailer, as described in the II.C.6. If the manufactured home or travel trailer is in a special flood hazard area, it must be anchored in the following manner at the time of the loss:

   a. By over-the-top or frame ties to ground anchors; *or*

   b. In accordance with the manufacturer's specifications; *or*

   c. In compliance with the community's floodplain management requirements unless it has been continuously insured by the NFIP at the same described location since September 30, 1982.

7. The following items of property which are insured under Coverage A only:

   a. Awnings and canopies;

   b. Blinds;

   c. Built-in dishwashers;

   d. Built-in microwave ovens;

   e. Carpet permanently installed over unfinished flooring;

   f. Central air conditioners;

   g. Elevator equipment;

   h. Fire sprinkler systems;

   i. Walk-in freezers;

   j. Furnaces and radiators;

   k. Garbage disposal units;

   l. Hot water heaters, including solar water heaters;

   m. Light fixtures;

   n. Outdoor antennas and aerials fastened to buildings;

   o. Permanently installed cupboards, bookcases, cabinets, paneling, and wallpaper;

   p. Plumbing fixtures;

   q. Pumps and machinery for operating pumps;

   r. Ranges, cooking stoves, and ovens;

   s. Refrigerators; *and*

   t. Wall mirrors, permanently installed.

## 8. Items of property below the lowest elevated floor of an elevated post-FIRM building located in Zones

## A1–A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1–A30, V1–V30, or VE, or in a basement regardless of the zone. Coverage is limited to the following:

a. Any of the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

(1) Central air conditioners;

(2) Cisterns and the water in them;

(3) Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;

(4) Electrical junction and circuit breaker boxes;

(5) Electrical outlets and switches;

(6) Elevators, dumbwaiters and related equipment, except for related equipment installed below the base flood elevation after September 30, 1987;

(7) Fuel tanks and the fuel in them;

(8) Furnaces and hot water heaters;

(9) Heat pumps;

(10) Nonflammable insulation in a basement;

(11) Pumps and tanks used in solar energy systems;

(12) Stairways and staircases attached to the building, not separated from it by elevated walkways;

(13) Sump pumps;

(14) Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;

(15) Well water tanks and pumps;

(16) Required utility connections for any item in this list; *and*

(17) Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.

b. Clean-up.

### B. Coverage B—Personal Property

1. If you have purchased personal property coverage, we insure against direct physical loss by or from flood to personal property inside a building at the described location, if:

   a. The property is owned by you or your household family members; *and*

   b. At your option, the property is owned by guests or servants.

2. Personal property is also insured for a period of 45 days at another location as set forth in III.C.2.b, Property Removed to Safety.

3. Personal property in a building that is not fully enclosed must be secured to prevent flotation out of the building. If the personal property does float out during a flood, it will be conclusively presumed that it was not reasonably secured. In that case, there is no coverage for such property.

4. Coverage for personal property includes the following property, subject to B.1 above, which is insured under Coverage B only:

   a. Air conditioning units, portable or window type;

   b. Carpets, not permanently installed, over unfinished flooring;

   c. Carpets over finished flooring;

   d. Clothes washers and dryers;

   e. "Cook-out" grills;

   f. Food freezers, other than walk-in, and food in any freezer; *and*

   g. Portable microwave ovens and portable dishwashers.

## 5. Coverage for items of property below the lowest elevated floor of an elevated post-FIRM building located in Zones A1–A30, AE, AH, AR, AR/A, AR/AE, AR/AH, AR/A1–A30, V1–V30, or VE, or in a basement regardless of the zone, is limited to the following items, if installed in their functioning locations and, if necessary for operation, connected to a power source:

a. Air conditioning units, portable or window type;

b. Clothes washers and dryers; *and*

c. Food freezers, other than walk-in, and food in any freezer.

6. If you are a tenant and have insured personal property under Coverage B in this policy, we will cover such property, including your cooking stove or range and refrigerator. **The policy will also cover improvements made or acquired solely at your expense in the dwelling or apartment in which you reside, but for not more than 10 percent of the limit of liability shown for personal property on the Declarations Page.** Use of this insurance is at your option but reduces the personal property limit of liability.

7. **If you are the owner of a unit and have insured personal property under Coverage B in this policy, we will also cover your interior walls, floor, and ceiling (not otherwise insured under a flood insurance policy purchased by your condominium association) for not more than 10 percent of the limit of liability shown for personal property on the Declarations Page. Use of this insurance is at your option but reduces the personal property limit of liability.**

8. **Special Limits.** We will pay no more than $2,500 for any one loss to one or more of the following kinds of personal property:

a. Artwork, photographs, collectibles, or memorabilia, including but not limited to, porcelain or other figures, and sports cards;

b. Rare books or autographed items;

c. Jewelry, watches, precious and semi-precious stones, or articles of gold, silver, or platinum;

d. Furs or any article containing fur that represents its principal value; *or*

e. Personal property used in any business.

9. **We will pay only for the functional value of antiques.**

C. Coverage C—Other Coverages

1. **Debris Removal**

a. We will pay the expense to remove non-owned debris that is on or in insured property and debris of insured property anywhere.

b. If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.

c. This coverage does not increase the Coverage A or Coverage B limit of liability.

2. **Loss Avoidance Measures**

a. **Sandbags, Supplies, and Labor**

(1) We will pay up to $1,000 for costs you incur to protect the insured building from a flood or imminent danger of flood, for the following:

(a) Your reasonable expenses to buy:

(i) Sandbags, including sand to fill them;

(ii) Fill for temporary levees;

(iii) Pumps; *and*

(iv) Plastic sheeting and lumber used in connection with these items.

(b) The value of work, at the Federal minimum wage, that you or a member of your house-hold perform.

(2) This coverage for Sandbags, Supplies, and Labor only applies if damage to insured property by or from flood is imminent and the threat of flood damage is apparent enough to lead a person of common prudence to anticipate flood damage. One of the following must also occur:

(a) A general and temporary condition of flooding in the area near the described

location must occur, even if the flood does not reach the building; or

(b) A legally authorized official must issue an evacuation order or other civil order for the community in which the building is located calling for measures to preserve life and property from the peril of flood.

This coverage does not increase the Coverage A or Coverage B limit of liability.

b. **Property Removed to Safety**

(1) We will pay up to $1,000 for the reasonable expenses you incur to move insured property to a place other than the described location that contains the property in order to protect it from flood or the imminent danger of flood. Reasonable expenses include the value of work, at the Federal minimum wage, you or a member of your household perform.

(2) If you move insured property to a location other than the described location that contains the property in order to protect it from flood or the imminent danger of flood, we will cover such property while at that location for a period of 45 consecutive days from the date you begin to move it there. The personal property that is moved must be placed in a fully enclosed building or otherwise reasonably protected from the elements.

(3) Any property removed, including a moveable home described in II.6.b and c, must be placed above ground level or outside of the special flood hazard area.

(4) This coverage does not increase the Coverage A or Coverage B limit of liability.

3. **Condominium Loss Assessments**

a. Subject to II.C.3.b below, if this policy insures a condominium unit, we will pay, up to the Coverage A limit of liability, your share of loss assessments charged against you by the condominium association in accordance with the condominium association's articles of association, declarations and your deed. The assessment must be made because of direct physical loss by or from flood during the policy term, to the unit or to the common elements of the NFIP insured condominium building in which this unit is located.

b. **We will not pay any loss assessment:**

(1) Charged against you and the condominium association by any governmental body;

(2) That results from a deductible under the insurance purchased by the condominium association insuring common elements;

(3) That results from a loss to personal property, including contents of a condominium building;

(4) In which the total payment combined under all policies exceeds the maximum amount of coverage available under the Act for a single unit in a condominium building where the unit is insured under both a Dwelling Policy and a RCBAP; or

(5) On any item of damage that has already been paid under a RCBAP where a single unit in a condominium building is insured by both a Dwelling Policy and a RCBAP.

c. Condominium Loss Assessment coverage does not increase the Coverage A Limit of Liability and is subject to the maximum coverage limits available for a single-family dwelling under the Act, payable between all

policies issued and covering the unit, under the Act.

**D. Coverage D—Increased Cost of Compliance**

1. **General**

   This policy pays you to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a building suffering flood damage. Compliance activities eligible for payment are: elevation, floodproofing, relocation, or demolition (or any combination of these activities) of your building. Eligible floodproofing activities are limited to:

   a. Non-residential buildings.

   b. Residential buildings with basements that satisfy FEMA's standards published in the Code of Federal Regulations [44 CFR 60.6(b) or (c)].

2. **Limit of Liability**

   We will pay you up to $30,000 under this Coverage D—Increased Cost of Compliance, which only applies to policies with building coverage (Coverage A). Our payment of claims under Coverage D is in addition to the amount of coverage which you selected on the application and which appears on the Declarations Page. But the maximum you can collect under this policy for both Coverage A—Building Property and Coverage D—Increased Cost of Compliance cannot exceed the maximum permitted under the Act. We do not charge a separate deductible for a claim under Coverage D.

3. **Eligibility**

   a. A building insured under Coverage A—Building Property sustaining a loss caused by a flood as defined by this policy must:

      (1) Be a "repetitive loss building." A repetitive loss building is one that meets the following conditions:

         (a) The building is insured by a contract of flood insurance issued under the NFIP.

         (b) The building has suffered flood damage on two occasions during a 10-year period which ends on the date of the second loss.

         (c) The cost to repair the flood damage, on average, equaled or exceeded 25 percent of the market value of the building at the time of each flood loss.

      (d) In addition to the current claim, the NFIP must have paid the previous qualifying claim, and the State or community must have a cumulative, substantial damage provision or repetitive loss provision in its floodplain management law or ordinance being enforced against the building; *or*

      (2) Be a building that has had flood damage in which the cost to repair equals or exceeds 50 percent of the market value of the building at the time of the flood. The State or community must have a substantial damage provision in its floodplain management law or ordinance being enforced against the building.

   b. This Coverage D pays you to comply with State or local floodplain management laws or ordinances that meet the minimum standards of the National Flood Insurance Program found in the Code of Federal Regulations at 44 CFR 60.3. We pay for compliance activities that exceed those standards under these conditions:

      (1) 3.a.1 above.

      (2) Elevation or floodproofing in any risk zone to preliminary or advisory base flood elevations provided by FEMA which the State or local government has adopted and is enforcing for flood-damaged buildings in such areas. (This includes compliance activities in B, C, X, or D zones which are being changed to zones with base flood elevations. This also includes compliance activities in zones where base flood elevations are being increased, and a flood-damaged building must comply with the higher advisory base flood elevation.) Increased Cost of Compliance coverage does not apply to situations in B, C, X, or D zones where the community has derived its own elevations and is enforcing elevation or floodproofing requirements for flood-damaged buildings to elevations derived solely by the community.

      (3) Elevation or floodproofing above the base flood elevation to meet State or local "free-board" requirements, i.e., that a building must be elevated above the base flood elevation.

c. Under the minimum NFIP criteria at 44 CFR 60.3(b)(4), States and communities must require the elevation or floodproofing of buildings in unnumbered A zones to the base flood elevation where elevation data is obtained from a Federal, State, or other source. Such compliance activities are eligible for Coverage D.

d. Coverage D will pay for the incremental cost, after demolition or relocation, of elevating or floodproofing a building during its rebuilding at the same or another site to meet State or local floodplain management laws or ordinances, subject to Coverage D Exclusion 5.g below.

e. Coverage D will pay to bring a flood-damaged building into compliance with State or local floodplain management laws or ordinances even if the building had received a variance before the present loss from the applicable floodplain management requirements.

4. **Conditions**

a. When a building insured under Coverage A—Building Property sustains a loss caused by a flood, our payment for the loss under this Coverage D will be for the increased cost to elevate, floodproof, relocate, or demolish (or any combination of these activities) caused by the enforcement of current State or local floodplain management ordinances or laws. Our payment for eligible demolition activities will be for the cost to demolish and clear the site of the building debris or a portion thereof caused by the enforcement of current State or local floodplain management ordinances or laws. Eligible activities for the cost of clearing the site will include those necessary to discontinue utility service to the site and ensure proper abandonment of on-site utilities.

b. When the building is repaired or rebuilt, it must be intended for the same occupancy as the present building unless otherwise required by current floodplain management ordinances or laws.

5. **Exclusions**

Under this Coverage D (Increased Cost of Compliance), we will not pay for:

a. The cost to comply with any floodplain management law or ordinance in communities participating in the Emergency Program.

b. The cost associated with enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

c. The loss in value to any insured building due to the

requirements of any ordinance or law.

d. The loss in residual value of the undamaged portion of a building demolished as a consequence of enforcement of any State or local floodplain management law or ordinance.

e. Any Increased Cost of Compliance under this Coverage D:

(1) Until the building is elevated, floodproofed, demolished, or relocated on the same or to another premises; *and*

(2) Unless the building is elevated, floodproofed, demolished, or relocated as soon as reasonably possible after the loss, not to exceed two years.

f. Any code upgrade requirements, e.g., plumbing or electrical wiring, not specifically related to the State or local floodplain management law or ordinance.

g. Any compliance activities needed to bring additions or improvements made after the loss occurred into compliance with State or local floodplain management laws or ordinances.

h. Loss due to any ordinance or law that you were required to comply with before the current loss.

i. Any rebuilding activity to standards that do not meet the NFIP's minimum requirements. This includes any situation where the insured has received from the State or community a variance in connection with the current flood loss to rebuild the property to an elevation below the base flood elevation.

j. Increased Cost of Compliance for a garage or carport.

k. Any building insured under an NFIP Group Flood Insurance Policy.

l. Assessments made by a condominium association on individual condominium unit owners to pay increased costs of repairing commonly owned buildings after a flood in compliance with State or local floodplain management ordinances or laws.

6. **Other Provisions**

a. Increased Cost of Compliance coverage will not be included in the calculation to determine whether coverage meets the 80 percent insurance-to-value requirement for replacement cost coverage as set forth in Art. VII.R ("Loss Settlement") of this policy.

b. All other conditions and provisions of this policy apply.

## IV. PROPERTY NOT INSURED

We do not insure any of the following:

1. Personal property not inside a building.

2. A building, and personal property in it, located entirely in, on, or over water or seaward of mean high tide if it was constructed or substantially improved after September 30, 1982.

3. Open structures, including a building used as a boathouse or any structure or building into which boats are floated, and personal property located in, on, or over water.

4. Recreational vehicles other than travel trailers described in the Definitions section (see II.C.6.c) whether affixed to a permanent foundation or on wheels.

5. Self-propelled vehicles or machines, including their parts and equipment. However, we do cover self-propelled vehicles or machines not licensed for use on public roads that are:

   a. Used mainly to service the described location; *or*

   b. Designed and used to assist handicapped persons, while the vehicles or machines are inside a building at the described location.

6. Land, land values, lawns, trees, shrubs, plants, growing crops, or animals.

7. Accounts, bills, coins, currency, deeds, evidences of debt, medals, money, scrip, stored value cards, postage stamps, securities, bullion, manuscripts, or other valuable papers.

8. Underground structures and equipment, including wells, septic tanks, and septic systems.

9. Those portions of walks, walkways, decks, driveways, patios and other surfaces, all whether protected by a roof or not, located outside the perimeter, exterior walls of the insured building or the building in which the insured unit is located.

10. Containers, including related equipment, such as, but not limited to, tanks containing gases or liquids.

11. Buildings or units and all their contents if more than 49 percent of the actual cash value of the building is below ground, unless the lowest level is at or above the base flood elevation and is below

ground by reason of earth having been used as insulation material in conjunction with energy efficient building techniques.

12. Fences, retaining walls, seawalls, bulkheads, wharves, piers, bridges, and docks.

13. Aircraft or watercraft, or their furnishings and equipment.

14. Hot tubs and spas that are not bathroom fixtures, and swimming pools, and their equipment, such as, but not limited to, heaters, filters, pumps, and pipes, wherever located.

15. Property not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act and the Coastal Barrier Improvement Act and amendments to these acts.

16. Personal property you own in common with other unit owners comprising the membership of a condominium association.

---

## V. EXCLUSIONS

A. We only pay for direct physical loss by or from flood, which means that we do not pay you for:

1. Loss of revenue or profits;

2. Loss of access to the insured property or described location;

3. Loss of use of the insured property or described location;

4. Loss from interruption of business or production;

5. Any additional living expenses incurred while the insured building is being repaired or is unable to be occupied for any reason;

6. The cost of complying with any ordinance or law requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting debris. This exclusion does not apply to any eligible activities we describe in Coverage D—Increased Cost of Compliance; *or*

7. Any other economic loss you suffer.

B. **Flood in Progress.** If this policy became effective as of the time of a loan closing, as provided by 44 CFR 61.11(b), we will not pay for a loss caused by a flood that is a continuation of a flood that existed prior to coverage becoming effective.

In all other circumstances, we will not pay for a loss caused by a flood that is a continuation of a flood that existed on or before the day you submitted the application for coverage under this policy and the full amount due. We will determine the date of application using 44 CFR 61.11(f).

C. We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood. Some examples of earth movement that we do not cover are:

1. Earthquake;

2. Landslide;

3. Land subsidence;

4. Sinkholes;

5. Destabilization or movement of land that results from accu-mulation of water in subsurface land area; *or*

6. Gradual erosion.

We do, however, pay for losses from mudflow and land subsidence as a result of erosion that are specifically insured under our definition of flood (see II.B.1.c and II.B.2).

D. We do not insure for direct physical loss caused directly or indirectly by any of the following:

1. The pressure or weight of ice;

2. Freezing or thawing;

3. Rain, snow, sleet, hail, or water spray;

4. Water, moisture, mildew, or mold damage that results primarily from any condition:

   a. Substantially confined to the dwelling; *or*

   b. That is within your control, including but not limited to:

      (1) Design, structural, or mechanical defects;

      (2) Failure, stoppage, or breakage of water or sewer lines, drains, pumps, fixtures, or equipment; *or*

      (3) Failure to inspect and maintain the property after a flood recedes;

5. Water or water-borne material that:

   a. Backs up through sewers or drains;

   b. Discharges or overflows from a sump, sump pump, or related equipment; *or*

   c. Seeps or leaks on or through the insured property;

   unless there is a flood in the area and the flood is the proximate

cause of the sewer or drain backup, sump pump discharge or overflow, or the seepage of water;

6. The pressure or weight of water unless there is a flood in the area and the flood is the proximate cause of the damage from the pressure or weight of water;

7. Power, heating, or cooling failure unless the failure results from direct physical loss by or from flood to power, heating, or cooling equipment on the described location;

8. Theft, fire, explosion, wind, or windstorm;

9. Anything you or any member of your household do or conspire to do to deliberately cause loss by flood; *or*

10. Alteration of the insured property that significantly increases the risk of flooding.

**E.** We do not insure for loss to any building or personal property located on land leased from the Federal Government, arising from or incident to the flooding of the land by the Federal Government, where the lease expressly holds the Federal Government harmless under flood insurance issued under any Federal Government program.

**F.** We do not pay for the testing for or monitoring of pollutants unless required by law or ordinance.

---

## VI. DEDUCTIBLES

**A.** When a loss is insured under this policy, we will pay only that part of the loss that exceeds your deductible amount, subject to the limit of liability that applies. The deductible amount is shown on the Declarations Page.

However, when a building under construction, alteration, or repair does not have at least two rigid exterior walls and a fully secured roof at the time of loss, your deductible amount will be two times the deductible that would otherwise apply to a completed building.

**B.** In each loss from flood, separate deductibles apply to the building and personal property insured by this policy.

**C.** The deductible does NOT apply to:

1. II.C.2. Loss Avoidance Measures;

2. II.C.3. Condominium Loss Assessments; *or*

3. III.D. Increased Cost of Compliance.

## VII. GENERAL CONDITIONS

### A. Pair and Set Clause

In case of loss to an article that is part of a pair or set, we will have the option of paying you:

1. An amount equal to the cost of replacing the lost, damaged, or destroyed article, minus its depreciation; or

2. The amount that represents the fair proportion of the total value of the pair or set that the lost, damaged, or destroyed article bears to the pair or set.

### B. Other Insurance

1. If a loss insured by this policy is also insured by other insurance that includes flood coverage not issued under the Act, we will not pay more than the amount of insurance you are entitled to for lost, damaged, or destroyed property insured under this policy subject to the following:

   a. We will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss, unless VII.B.1.b or c immediately below applies.

   b. If the other policy has a provision stating that it is excess insurance, this policy will be primary.

   c. This policy will be primary (but subject to its own deductible) up to the deductible in the other flood policy (except another policy as described in VII.B.1.b above). When the other deductible amount is reached, this policy will participate in the same proportion that the amount of insurance under this policy bears to the total amount of both policies, for the remainder of the loss.

2. If there is other insurance issued under the Act in the name of your condominium association covering the same property insured by this policy, then this policy will be in excess over the other insurance, except where a condominium loss assessment to the unit owner results from a loss sustained by the condominium association that was not reimbursed under a flood insurance policy written in the name of the association under the Act because the building was not, at the time of loss, insured for an amount equal to the lesser of:

   a. 80 percent or more of its full replacement cost; or

b. The maximum amount of insurance permitted under the Act.

3. The combined coverage payment under the other NFIP insurance and this policy cannot exceed the maximum coverage available under the Act, of $250,000 per single unit.

### C. Amendments, Waivers, Assignment

This policy cannot be changed, nor can any of its provisions be waived, without the express written consent of the Federal Insurance Administrator. No action we take under the terms of this policy constitutes a waiver of any of our rights. You may assign this policy in writing when you transfer title of your property to someone else except under these conditions:

   a.  When this policy insures only personal property; *or*

   b.  When this policy insures a building under construction.

### D. Insufficient Premium or Rating Information

1. **Applicability.** The following provisions apply to all instances where the premium paid on this policy is insufficient or where the rating information is insufficient, such as where an Elevation Certificate is not provided.

2. **Reforming the Policy with Reduced Coverage.** Except as otherwise provided in VII.D.1, if the premium we received from you was not sufficient to buy the kinds and amounts of coverage you requested, we will provide only the kinds and amounts of coverage that can be purchased for the premium payment we received.

a. For the purpose of determining whether your premium payment is sufficient to buy the kinds and amounts of coverage you requested, we will first deduct the costs of all applicable fees and surcharges.

b. If the amount paid, after deducting the costs of all applicable fees and surcharges, is not sufficient to buy any amount of coverage, your payment will be refunded. Unless the policy is reformed to increase the coverage amount to the amount originally requested pursuant to VII.D.3, this policy will be cancelled, and no claims will be paid under this policy.

c. Coverage limits on the reformed policy will be based upon the amount of premium submitted per type of coverage, but will not exceed the amount originally requested.

3. **Discovery of Insufficient Premium or Rating Information.** If we discover that your premium payment was not sufficient to buy the requested amount of coverage, the policy will

NFIP DWELLING FORM SFIP                                    PAGE 16 OF 30

be reformed as described in VII.D.2. You have the option of increasing the amount of coverage resulting from this reformation to the amount you requested as follows:

a. **Insufficient Premium.** If we discover that your premium payment was not sufficient to buy the requested amount of coverage, we will send you, and any mortgagee or trustee known to us, a bill for the required additional premium for the current policy term (or that portion of the current policy term following any endorsement changing the amount of coverage). If it is discovered that the initial amount charged to you for any fees or surcharges is incorrect, the difference will be added or deducted, as applicable, to the total amount in this bill.

   (1) If you or the mortgagee or trustee pays the additional premium amount due within 30 days from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount, effective to the beginning

of the current policy term (or subsequent date of any endorsement changing the amount of coverage).

   (2) If you or the mortgagee or trustee do not pay the additional amount due within 30 days of the date of our bill, any flood insurance claim will be settled based on the reduced amount of coverage.

   (3) As applicable, you have the option of paying all or part of the amount due out of a claim payment based on the originally requested amount of coverage.

b. **Insufficient Rating Information.** If we determine that the rating information we have is insufficient and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information within 60 days of our request.

   (1) If we receive the information within 60 days of our request, we will determine the amount of additional premium for the current

policy term, and follow the procedure in VII.D.3.a above.

(2) If we do not receive the information within 60 days of our request, no claims will be paid until the requested information is provided. Coverage will be limited to the amount of coverage that can be purchased for the payments we received, as determined when the requested information is provided.

4. **Coverage Increases.** If we do not receive the amounts requested in VII.D.3.a or the additional information requested in VII.D.3.b by the date it is due, the amount of coverage under this policy can only be increased by endorsement subject to the appropriate waiting period. However, no coverage increases will be allowed until you have provided the information requested in VII.D.3.b.

5. **Falsifying Information.** However, if we find that you or your agent intentionally did not tell us, or falsified any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of VIII.A apply.

### E. Policy Renewal

1. This policy will expire at 12:01 a.m. on the last day of the policy term.

2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.

3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:

   a. If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

   b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.

4. In connection with the renewal of this policy, we may ask you during the policy term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most recent application for or renewal of insurance.

### F. Conditions Suspending or Restricting Insurance

We are not liable for loss that occurs while there is a hazard that is increased by any means within your control or knowledge.

### G. Requirements in Case of Loss

In case of a flood loss to insured property, you must:

1. Give prompt written notice to us.

2. As soon as reasonably possible, separate the damaged and

undamaged property, putting it in the best possible order so that we may examine it.

3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss. Attach all bills, receipts, and related documents.

4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

   a. The date and time of loss;

   b. A brief explanation of how the loss happened;

   c. Your interest (for example, "owner") and the interest, if any, of others in the damaged property;

   d. Details of any other insurance that may cover the loss;

   e. Changes in title or occupancy of the insured property during the term of the policy;

   f. Specifications of damaged buildings and detailed repair estimates;

   g. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;

   h. Details about who occupied any insured building at the time of loss and for what purpose; *and*

   i. The inventory of damaged personal property described in G.3 above.

5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.

6. You must cooperate with the adjuster or representative in the investigation of the claim.

7. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.

8. We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

9. At our option, we may accept the adjuster's report of the loss instead of your proof of loss. The adjuster's report will include information about your loss and the damages you sustained. You must sign the adjuster's report. At our option, we may require you to swear to the report.

H. Our Options After a Loss

Options we may, in our sole discretion, exercise after loss include the following:

1. At such reasonable times and places that we may designate, you must:

    a. Show us or our representative the damaged property;

    b. Submit to examination under oath, while not in the presence of another insured, and sign the same; *and*

    c. Permit us to examine and make extracts and copies of:

        (1) Any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property;

        (2) Condominium association documents including the Declarations of the condominium, its Articles of Association or Incorporation, Bylaws, rules and regulations, and other relevant documents if you are a unit owner in a condominium building; *and*

        (3) All books of accounts, bills, invoices and other vouchers, or certified copies pertaining to the damaged property if the originals are lost.

2. We may request, in writing, that you furnish us with a complete inventory of the lost, damaged or destroyed property, including:

    a. Quantities and costs;

    b. Actual cash values or replacement cost (whichever is appropriate);

    c. Amounts of loss claimed;

    d. Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; *and*

    e. Evidence that prior flood damage has been repaired.

3. If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may:

    a. Repair, rebuild, or replace any part of the lost, damaged, or destroyed property with material or property of like kind and quality or its functional equivalent; *and*

    b. Take all or any part of the damaged property at the value that we agree upon or its appraised value.

I. No Benefit to Bailee

No person or organization, other than you, having custody of insured property will benefit from this insurance.

### J. Loss Payment

1. We will adjust all losses with you. We will pay you unless some other person or entity is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss (or within 90 days after the insurance adjuster files the adjuster's report signed and sworn to by you in lieu of a proof of loss) and:

   a. We reach an agreement with you;

   b. There is an entry of a final judgment; *or*

   c. There is a filing of an appraisal award with us, as provided in VII.M.

2. If we reject your proof of loss in whole or in part you may:

   a. Accept our denial of your claim;

   b. Exercise your rights under this policy; *or*

   c. File an amended proof of loss as long as it is filed within 60 days of the date of the loss.

### K. Abandonment

You may not abandon to us damaged or undamaged property insured under this policy.

### L. Salvage

We may permit you to keep damaged property insured under this policy after a loss, and we will reduce the amount of the loss proceeds payable to you under the policy by the value of the salvage.

### M. Appraisal

If you and we fail to agree on the actual cash value or, if applicable, replacement cost of your damaged property to settle upon the amount of loss, then either may demand an appraisal of the loss. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the insured property is located. The appraisers will separately state the actual cash value, the replacement cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of actual cash value and loss, or if it applies, the replacement cost and loss.

Each party will:

1. Pay its own appraiser; *and*

2. Bear the other expenses of the appraisal and umpire equally.

### N. Mortgage Clause

1. The word "mortgagee" includes trustee.

2. Any loss payable under Coverage A—Building Property will be paid to any mortgagee of whom we have actual notice, as well as any other mortgagee or loss payee determined to exist at the time of loss, and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

3. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in the ownership or occupancy, or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; *and*

   c. Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.

4. All of the terms of this policy apply to the mortgagee.

5. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building.

6. If we decide to cancel or not renew this policy, it will continue in effect for the benefit of the mortgagee only for 30 days after we notify the mortgagee of the cancellation or non-renewal.

7. If we pay the mortgagee for any loss and deny payment to you, we are subrogated to all the rights of the mortgagee granted under the mortgage on the property. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

O. Suit Against Us

You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

P. Subrogation

Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of that money.

Q. Continuous Lake Flooding

1. If an insured building has been flooded by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in an insured loss to the insured building equal to or greater than the building policy limits plus the deductible or the maximum payable under the policy for any one building loss, we will pay you the lesser of these two amounts without waiting for the further

damage to occur if you sign a release agreeing:

a. To make no further claim under this policy;

b. Not to seek renewal of this policy;

c. Not to apply for any flood insurance under the Act for property at the described location;

d. Not to seek a premium refund for current or prior terms.

If the policy term ends before the insured building has been flooded continuously for 90 days, the provisions of this paragraph Q.1 will apply when the insured building suffers a covered loss before the policy term ends.

2. If your insured building is subject to continuous lake flooding from a closed basin lake, you may elect to file a claim under either paragraph Q.1 above or Q.2 (A "closed basin lake" is a natural lake from which water leaves primarily through evaporation and whose surface area now exceeds or has exceeded one square mile at any time in the recorded past. Most of the nation's closed basin lakes are in the western half of the United States where annual evaporation exceeds annual precipitation and where lake levels and surface areas are subject to considerable fluctuation due to wide variations in the climate. These lakes may overtop their basins on rare occasions.) Under this paragraph Q.2, we will pay your claim as if the building is a total loss even though it has not been continuously inundated for 90 days, subject to the following conditions:

a. Lake floodwaters must damage or imminently threaten to damage your building.

b. Before approval of your claim, you must:

(1) Agree to a claim payment that reflects your buying back the salvage on a negotiated basis; *and*

(2) Grant the conservation easement described in FEMA's "Policy Guidance for Closed Basin Lakes" to be recorded in the office of the local recorder of deeds. FEMA, in consultation with the community in which the property is located, will identify on a map an area or areas

of special consideration (ASC) in which there is a potential for flood damage from continuous lake flooding. FEMA will give the community the agreed-upon map showing the ASC. This easement will only apply to that portion of the property in the ASC. It will allow certain agricultural and recreational uses of the land. The only structures it will allow on any portion of the property within the ASC are certain simple agricultural and recreational structures. If any of these allowable structures are insurable buildings under the NFIP and are insured under the NFIP, they will not be eligible for the benefits of this paragraph Q.2. If a U.S. Army Corps of Engineers certified flood control project or otherwise certified flood control project later protects the property, FEMA will, upon request, amend the ASC to remove areas protected by those projects. The restrictions of the easement will then no longer apply to any portion of the property removed from the ASC; *and*

 (3) Comply with paragraphs Q.1.a through Q.1.d above.

c. Within 90 days of approval of your claim, you must move your building to a new location outside the ASC. FEMA will give you an additional 30 days to move if you show there is sufficient reason to extend the time.

d. Before the final payment of your claim, you must acquire an elevation certificate and a floodplain development permit from the local floodplain administrator for the new location of your building.

e. Before the approval of your claim, the community having jurisdiction over your building must:

 (1) Adopt a permanent land use ordinance, or a temporary moratorium for a period not to exceed 6 months to be followed immediately by a permanent land use ordinance that is consistent with the provisions specified in the easement required in paragraph Q.2.b above;

(2) Agree to declare and report any violations of this ordinance to FEMA so that under Section 1316 of the National Flood Insurance Act of 1968, as amended, flood insurance to the building can be denied; *and*

(3) Agree to maintain as deed-restricted, for purposes compatible with open space or agricultural or recreational use only, any affected property the community acquires an interest in. These deed restrictions must be consistent with the provisions of paragraph Q.2.b above, except that, even if a certified project protects the property, the land use restrictions continue to apply if the property was acquired under the Hazard Mitigation Grant Program or the Flood Mitigation Assistance Program. If a non-profit land trust organization receives the property as a donation, that organization must maintain the property as deed-restricted, consistent with the provisions of paragraph Q.2.b above.

f. Before the approval of your claim, the affected State must take all action set forth in FEMA's "Policy Guidance for Closed Basin Lakes."

g. You must have NFIP flood insurance coverage continuously in effect from a date established by FEMA until you file a claim under paragraph Q.2. If a subsequent owner buys NFIP insurance that goes into effect within 60 days of the date of transfer of title, any gap in coverage during that 60-day period will not be a violation of this continuous coverage requirement. For the purpose of honoring a claim under this paragraph Q.2, we will not consider to be in effect any increased coverage that became effective after the date established by FEMA. The exception to this is any increased coverage in the amount suggested by your insurer as an inflation adjustment.

h. This paragraph Q.2 will be in effect for a community when the FEMA Regional Administrator for the affected region provides

to the community, in writing, the following:

(1) Confirmation that the community and the State are in compliance with the conditions in paragraphs Q.2.e and Q.2.f above; *and*

(2) The date by which you must have flood insurance in effect.

## R. Loss Settlement

1. **Introduction**

    This policy provides three methods of settling losses: Replacement Cost, Special Loss Settlement, and Actual Cash Value. Each method is used for a different type of property, as explained in paragraphs a–c below.

    a. **Replacement Cost Loss Settlement**, described in R.2 below, applies to a single-family dwelling provided:

        (1) It is your principal residence; *and*

        (2) At the time of loss, the amount of insurance in this policy that applies to the dwelling is 80 percent or more of its full replacement cost immediately before the loss, or is the maximum amount of insurance available under the NFIP.

    b. **Special Loss Settlement**, described in R.3 below, applies to a single-family dwelling that is a manufactured or mobile home or a travel trailer.

    c. **Actual Cash Value Loss Settlement** applies to a single-family dwelling not subject to replacement cost or special loss settlement, and to the property listed in R.4 below.

2. **Replacement Cost Loss Settlement**

    The following loss settlement conditions apply to a single-family dwelling described in R.1.a above:

    a. We will pay to repair or replace the damaged dwelling after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

        (1) The building limit of liability shown on your Declarations Page;

        (2) The replacement cost of that part of the dwelling damaged, with materials of like kind and quality and for like use; *or*

        (3) The necessary amount actually spent to repair or replace the damaged part of the dwelling for like use.

    b. If the dwelling is rebuilt at a new location, the cost described above is limited to the cost that would have been incurred if the dwelling had been rebuilt at its former location.

    c. When the full cost of repair or replacement is more than $1,000, or more than 5 percent of the whole amount of insurance that applies to the dwelling, we will not be liable for any loss under R.2.a above or R.4.a.2 below unless and until actual repair or replacement is completed.

    d. You may disregard the replacement cost conditions above and make claim under this policy for loss to dwellings on an actual cash value basis. You may then make claim for any additional liability according to R.2.a, b, and c above, provided you notify us of your intent to do so within 180 days after the date of loss.

    e. If the community in which your dwelling is located has been converted from the Emergency Program to the Regular Program during the current policy term, then we will consider the maximum amount of available NFIP insurance to be the amount that was available at the beginning of the current policy term.

3. **Special Loss Settlement**

    a. The following loss settlement conditions apply to a single-family dwelling that:

        (1) is a manufactured or mobile home or a travel trailer, as defined in II.C.6.b and c;

(2) is at least 16 feet wide when fully assembled and has an area of at least 600 square feet within its perimeter walls when fully assembled; *and*

(3) is your principal residence as specified in <u>R.1.a.1</u> above.

b. If such a dwelling is totally destroyed or damaged to such an extent that, in our judgment, it is not economically feasible to repair, at least to its pre-damage condition, we will, at our discretion pay the least of the following amounts:

(1) The lesser of the replacement cost of the dwelling or 1.5 times the actual cash value; *or*

(2) The building limit of liability shown on your Declarations Page.

c. If such a dwelling is partially damaged and, in our judgment, it is economically feasible to repair it to its pre-damage condition, we will settle the loss according to the Replacement Cost conditions in <u>R.2</u> above.

4. **Actual Cash Value Loss Settlement**

The types of property noted below are subject to actual cash value (or in the case of <u>R.4.a.2,</u> below, proportional) loss settlement.

a. A dwelling, at the time of loss, when the amount of insurance on the dwelling is both less than 80 percent of its full replacement cost immediately before the loss and less than the maximum amount of insurance available under the NFIP. In that case, we will pay the greater of the following amounts, but not more than the amount of insurance that applies to that dwelling:

(1) The actual cash value, as defined in II.<u>C.2</u>, of the damaged part of the dwelling; *or*

(2) A proportion of the cost to repair or replace the damaged part of the dwelling, without deduction for physical depreciation and after application of the deductible.

This proportion is determined as follows: If 80 percent of the full replacement cost of the dwelling is less than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the amount of insurance that represents 80 percent of its full replacement cost. But if 80 percent of the full replacement cost of the dwelling is greater than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the maximum amount of insurance available under the NFIP.

b. A two-, three-, or four-family dwelling.

c. A unit that is not used exclusively for single-family dwelling purposes.

d. Detached garages.

e. Personal property.

f. Appliances, carpets, and carpet pads.

g. Outdoor awnings, outdoor antennas or aerials of any type, and other outdoor equipment.

h. Any property insured under this policy that is abandoned after a loss and remains as debris anywhere on the described location.

i. A dwelling that is not your principal residence.

5. **Amount of Insurance Required**

To determine the amount of insurance required for a dwelling immediately before the loss, we do not include the value of:

a. Footings, foundations, piers, or any other structures or devices that are below the undersurface of the lowest basement floor and support all or part of the dwelling;

b. Those supports listed in <u>R.5.a</u> above, that are below the surface of the ground inside the foundation walls if there is no basement; *and*

c. Excavations and underground flues, pipes, wiring, and drains.

**Note:** The Coverage D—Increased Cost of Compliance limit of liability is not included in the determination of the amount of insurance required.

## VIII. POLICY NULLIFICATION, CANCELLATION, AND NON-RENEWAL

**A. Policy Nullification for Fraud, Misrepresentation, or Making False Statements**

1. With respect to all insureds under this policy, this policy is void and has no legal force and effect if at any time, before or after a loss, you or any other insured or your agent have, with respect to this policy or any other NFIP insurance:

   a. Concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; *or*

   c. Made false statements.

2. Policies voided under A.1 cannot be renewed or replaced by a new NFIP policy.

3. Policies are void as of the date the acts described in A.1 above were committed.

4. Fines, civil penalties, and imprisonment under applicable Federal laws may also apply to the acts of fraud or concealment described above.

**B. Policy Nullification for Reasons Other Than Fraud**

1. This policy is void from its inception, and has no legal force or effect, if:

   a. The property listed on the application is located in a community that was not participating in the NFIP on this policy's inception date and did not join or reenter the program during the policy term and before the loss occurred;

   b. The property listed on the application is otherwise not eligible for coverage under the NFIP at the time of the initial application;

   c. You never had an insurable interest in the property listed on the application;

   d. You provided an agent with an application and payment, but the payment did not clear; *or*

   e. We receive notice from you, prior to the policy effective date, that you have determined not to take the policy and you are not subject to a requirement to obtain and maintain flood insurance pursuant to any statute, regulation, or contract.

2. In such cases, you will be entitled to a full refund of all premium, fees, and surcharges received. However, if a claim was paid for a policy that is void, the claim payment must be returned to FEMA or offset from the premiums to be refunded before the refund will be processed.

C. Cancellation of the Policy by You

1. You may cancel this policy in accordance with the terms and conditions of this policy and the applicable rules and regulations of the NFIP.

2. If you cancel this policy, you may be entitled to a full or partial refund of premium, surcharges, or fees under the terms and conditions of this policy and the applicable rules and regulations of the NFIP.

D. Cancellation of the Policy by Us

1. **Cancellation for Underpayment of Amounts Owed on Policy.** This policy will be cancelled, pursuant to VII.D.2, if it is determined that the premium amount you paid is not sufficient to buy any amount of coverage, and you do not pay the additional amount of premium owed to increase the coverage to the originally requested amount within the required time period.

2. **Cancellation Due to Lack of an Insurable Interest.**

   a. If you no longer have an insurable interest in the insured property, we will cancel this policy. You will cease to have an insurable interest if:

      (1) For building coverage, the building was sold, destroyed, or removed.

      (2) For contents coverage, the contents were sold or transferred ownership, or the contents were completely removed from the described location.

   b. If your policy is cancelled for this reason, you may be entitled to a partial refund of premium under the applicable rules and regulations of the NFIP.

3. **Cancellation of Duplicate Policies**

   a. Except as allowed under Article I.G, your property may not be insured by more than one NFIP policy, and payment for damages to your property will only be made under one policy.

   b. Except as allowed under Article I.G, if the property is insured by more than one NFIP policy, we will cancel all but one of the policies. The policy, or policies, will be selected for cancellation in accordance with 44 CFR 62.5 and the applicable rules and guidance of the NFIP.

   c. If this policy is cancelled pursuant to VIII.D.4.b, you may be entitled to a full or partial refund of premium, surcharges, or fees under the terms and conditions of this policy and the applicable rules and regulations of the NFIP.

## 4. Cancellation Due to Physical Alteration of Property

a. If the insured building has been physically altered in such a manner that it is no longer eligible for flood insurance coverage, we will cancel this policy.

b. If your policy is cancelled for this reason, you may be entitled to a partial refund of premium under the terms and conditions of this policy and the applicable rules and regulations of the NFIP.

### E. Non-Renewal of the Policy by Us

Your policy will not be renewed if:

1. The community where your insured property is located is suspended or stops participating in the NFIP;

2. Your building is otherwise ineligible for flood insurance under the Act;

3. You have failed to provide the information we requested for the purpose of rating the policy within the required deadline.

---

## IX. LIBERALIZATION CLAUSE

---

If we make a change that broadens your coverage under this edition of our policy, but does not require any additional premium, then that change will automatically apply to your insurance as of the date we implement the change, provided that this implementation date falls within 60 days before or during the policy term stated on the Declarations Page.

---

## X. WHAT LAW GOVERNS

---

This policy and all disputes arising from the insurer's policy issuance, policy administration, or the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

---

In Witness Whereof, we have signed this policy below and hereby enter into this Insurance Agreement.

Deputy Associate Administrator
Federal Insurance and Mitigation Administration

American Strategic Insurance Corp.
P.O. Box 33018
St. Petersburg, FL 33733-8018
866-511-0793
FloodUnderwriting@asicorp.org



NATIONAL FLOOD INSURANCE PROGRAM®    PROGRESSIVE FLOOD

**Endorsement - Manual**              **Dwelling Policy Form**              **Policy Declarations**

| | |
|---|---|
| **Policy Number:** 0FLD157985 | **Policy Period:** 02/21/2022 to 02/21/2023 |
| **Product Type:** Standard Policy | At the time of loan closing |
| Endorsement Reason: Change Mortgagee | **Endorsement Effective:** 2/21/2022 |

| Named Insured | NAIC: 10872 | Agent/Producer Name & Address |
|---|---|---|
| MELISSA STOLT | | 416730 - PRIVATE CLIENT INSURANCE SERVICES, LLC |
| **Property Location:** | | 9736 COMMERCE CENTER CT FORT MYERS, FL 33908 |
| 1493 CENTER ST | | (239)481-1949 |
| SANIBEL, FL 33957-4534 | | |
| | | |
| **Mailing Address** | | **Payor:** Sanibel Captiva Community Bank |
| 1493 CENTER ST | | ISAOA/ATIMA |
| SANIBEL, FL 33957 | | |

**Community Rating Information**

| | | **Building Information** |
|---|---|---|
| Community Name: | **SANIBEL, CITY OF** | Occupancy: **Single Family** |
| Community Number: | **120402 - 0533 - F** | Elevated Building: **Yes** |
| Current Flood Zone: | **AE** | Building Type: **One Floor** |
| FIRM Type: | **POST** | Elevated - Without Enclosure |
| Program: | Regular | Replacement Cost: **$200,000** |
| | | Primary Residence: Yes |
| **NFIP Grandfathering:** | | Building Includes Addition(s) and Extension(s) |
| Grandfathered: | **No** | **Contents Location:** |
| Rating Community Number: | **120402 - 0533 - F** | Lowest Floor Only Above Ground Level |
| Rating Flood Zone: | **AE** | |

1

**Coverage Information**

| | Limit(s): | Deductible | Premium |
|---|---|---|---|
| Building | $190,000 | $1,250 | $303.00 |
| Contents | $47,500 | $1,250 | $122.00 |

| | | |
|---|---|---|
| **THIS IS NOT A BILL** | Deductible Discount: | -$8.00 |
| MORTGAGEE: | ICC Premium: | $8.00 |
| The Reform Act of 1994 requires you to notify the WYO company for | CRS Disc: 25% | -$106.00 |
| the policy within 60 days of any changes in the service of the loan. | Reserve Fund Assessment: | $57.00 |
| **COVERAGE LIMITATIONS MAY APPLY.** | Probation Surcharge: | $0.00 |
| See Your Policy Form for Detail | Federal Policy Fee: | $50.00 |
| Refer to www.fema.gov/cost-of-flood for more information | HFIAA Surcharge: | $25.00 |
| about flood risk and policy rating. | **Total Premium Paid:** | $451.00 |
| | **Endorsement Premium:** | $0.00 |
| | **Annual Premium:** | $451.00 |

**Special Provisions**
This policy covers only one building. If you have more than one building on your property, please make sure each is covered. See
Section III Property Covered within your flood policy for the NFIP definition of 'building' or contact your agent, broker or insurance

**Forms and Endorsements**
ASI FLD IMPINF 08,  DW 10 2021 Merged

This Declarations Page, in conjunction with the policy, constitutes your Flood Insurance Policy. IN
WITNESS WHEREOF, we have signed this policy below and hereby enter into this Insurance

Date:    02/07/2022

Kevin Milkey
Executive Vice President, American Strategic Insurance

NFIP STD DP 04 19

**Mortgagee(s)**

**First Mortgagee:**
SANIBEL CAPTIVA COMMUNITY BANK ISAOA/ATIMA
PO BOX 187                                                LOAN #:52902324
SANIBEL, FL 33957-0187                                    ESCROW: YES

**Second Mortgagee:**
LEE COUNTY DEPT OF COMMUNITY DEV DIV OF PLNG
P.O. BOX 398                                              LOAN #:
FORT MYERS, FL 33902-0398                                 ESCROW: NO

**Additional Mortgagee:**
LEE COUNTY DEPT OF HUMAN SERVICES
P.O. BOX 398                                              LOAN #:
FORT MYERS, FL 33902-0398                                 ESCROW: NO

**Additional Named Insured(s)**

**First Additional Named Insured:**
JESSE L STOLT
1493 CENTER ST
SANIBEL, FL 33957-4534

NFIP STD DP 04 19